UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAMIE S. FRANKLIN,<br><br>                      Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                    Defendant. | Case No. 15-cv-01764-RJB-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for July 1, 2016 |

Plaintiff has brought this matter for judicial review of defendant's denial of her application for supplemental security income benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976). For the reasons set forth below, the undersigned recommends that the Court reverse defendant's decision to deny benefits and remand this matter for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On November 29, 2012, plaintiff filed an application for supplemental security income benefits, alleging disability as of August 15, 1999. *See* Dkt. 12, Administrative Record ("AR") 27. The application was denied upon initial administrative review on March 13, 2013, and on reconsideration on May 24, 2013. *See id.* A hearing was held before an administrative law judge ("ALJ") on November 7, 2013, at which plaintiff, represented by counsel, appeared and testified,

REPORT AND RECOMMENDATION - 1

as did a vocational expert. *See* AR 27; 44–75. At that hearing, plaintiff amended her alleged onset date of disability to November 29, 2012. *Id.*

In a decision dated April 16, 2014, the ALJ determined plaintiff to be not disabled. *See* AR 27–39. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on August 14, 2015, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 5; 20 C.F.R. § 404.981, § 416.1481. On November 12, 2015, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *See* Dkt. 3. The administrative record was filed with the Court on March 3, 2016. *See* Dkt. 12. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in failing to find plaintiff's diagnosis of fatigue is a severe impairment; (3) in discounting her credibility; and (4) in finding her to be capable of performing other jobs existing in significant numbers in the national economy. For the reasons set forth below, the undersigned agrees the ALJ erred in evaluating Dr. Boustead's medical opinion, in failing to consider whether Plaintiff's diagnosis of fatigue is severe, and in her step five analysis, and therefore in determining plaintiff to be not disabled. Also for the reasons set forth below, however, the undersigned recommends that while defendant's decision to deny benefits should be reversed on this basis, this matter should be remanded for further administrative proceedings.

DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by

REPORT AND RECOMMENDATION - 2

the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2 at 1119 n.10.

REPORT AND RECOMMENDATION - 3

I. The ALJ's Evaluation of Dr. Boustead's Medical Opinion

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Social Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (citation

REPORT AND RECOMMENDATION - 4

omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706–07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson*, 359 F.3d at 1195; *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830–31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

Plaintiff challenges the ALJ's following findings regarding the medical opinion of Dr. Shannon Boustead:

> The record also includes two physical evaluation forms that were filled out by the claimant's treating physician, Shannon A. Boustead, M.D. In November 2012, Dr. Boustead noted diagnoses of back pain, lumbar and thoracic, and coronary artery disease. []He also opined that the claimant could perform work activities at the sedentary level. This assessment is consistent with the longitudinal record . . . Furthermore, as a treating physician, Dr. Boustead is in an advantageous position to assess the claimant's abilities and limitation. Therefore, this evaluation was given greater weight.
>
> However, in June 2013, Dr. Boustead provided another evaluation form on which []he noted that the claimant's overall work level was severely limited. However, there is no explanation in the intervening treatment records as to why the claimant's functioning significantly decreased from November 2012 to June 2013. Furthermore, the physical examination notes in June 2013 do not support a significant worsening of the claimant's condition. At that time, Dr. Boustead noted that the claimant's muscle strength was full at 5/5, there was no swelling, edema, or erythema of the lumbar spine, and no paraspinous muscle spasm. Though []he noted that the claimant had minimal extension and reduced flexion at

REPORT AND RECOMMENDATION - 5

> the low back, []he did not document specific range of motion, and actually indicated that the exam was quite limited secondary to the claimant's body habitus. For these reason, the undersigned has given no weight to the June 2013 opinion of Dr. Boustead, as it is inconsistent with the medical record and objective findings.

*See* AR 36 (citations to the record omitted). Plaintiff argues that these are insufficient reasons for rejecting Dr. Boustead's opinion. *See* Dkt. 14, pp. 5–10. The undersigned agrees.

First, the ALJ gave no weight to Dr. Boustead's opinion because "there is no explanation in the intervening treatment records as to why the claimant's functioning significantly decreased from November 2012 to June 2013." *See* AR 36. The ALJ did not provide any citations to the intervening treatment records. *See id.* However, as noted by plaintiff, Dr. Boustead treated plaintiff multiple times between November 2012 and June 2013. On December 14, 2012, plaintiff reported "[s]evere pain in back . . . [p]ain going from right back and radiates down to heel in right leg[, and] [d]ifficulty ambulating worse in the morning." AR 407. Dr. Boustead also noted that pain was "mainly around [the] right SI joint" . . . "[c]onsistent either with disc protrusion or SI joint dysfunction with attendant sciatica." AR 408–09. On February 1, 2013, plaintiff reported that while walking her dog, the dog pulled her and her "[b]ack wrenched out." AR 518. On March 7, 2013, plaintiff reported that her mid-back pain started again after her sleep study, and on March 28, 2013, patient reported that she "[h]ad another fall." AR 513. In April 2013, plaintiff had an MRI, and in his treatment notes in May 2013, Dr. Boustead opined that the "MRI shows likely nerve impingement on right [consistent with] symptoms." AR 626. In short, the record as a whole does not support the ALJ's finding that the intervening treatment records do not provide an explanation for plaintiff's decrease in functioning.

Second, the ALJ discounted Dr. Boustead's opinion as inconsistent with the objective medical evidence. As an initial matter, the ALJ's treatment of this portion of Dr. Boustead's

REPORT AND RECOMMENDATION - 6

opinion suggests improper "cherry-picking" to support the ALJ's decision, while failing to address aspects of the record supporting a finding of disabling limitations. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) ("[T]he ALJ improperly cherry-picked some of [the doctor's] characterizations of [the claimant's] rapport and demeanor instead of considering these factors in the context of [the doctor's] diagnoses and observations of impairment.") (citations omitted). For example, although the ALJ noted that the exam was limited by the plaintiff's body habitus, the ALJ omitted the rest of Dr. Boustead's observation that the exam was limited by limited back range of motion, *see* AR 562, and "+joint line tenderness on both knees." *See* AR 565. In addition, although the ALJ suggested that Dr. Boustead's exam was unremarkable, the ALJ also ignored Dr. Boustead's findings that plaintiff had "[s]ignificant TTP [tender to palpitation] bilaterally in paraspinous musculature in trapezii and at insertion onto occiput … [m]inimal ability to rotate to the left … [and] pain radiating to foot along leg." AR 565. In short, the ALJ appears to have improperly cherry-picked portions of Dr. Boustead's opinion to support her decision and ignored the remainder of the medical observations.

In addition, in rejecting Dr. Boustead's opinion, the ALJ offered a blanket statement that Dr. Boustead's opinion was inconsistent with the objective findings. *See* AR 36. The ALJ's statement lacks the specificity required by the Court. As noted by the Ninth Circuit:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. Moreover[,] the ALJ's analysis does not give proper weight to the subjective elements of the doctors' diagnoses. The subjective judgments of treating physicians are important, and properly play a part in their medical evaluations.

*Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) (internal footnote omitted); *see also* 20

REPORT AND RECOMMENDATION - 7

C.F.R. §§ 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions"). The ALJ provided only conclusory statements that the June examination did not support Dr. Boustead's findings, which is insufficient to reject the opinion. *See Embrey*, 849 F.2d at 421–22; *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (the ALJ's rejection of a physician's opinion on the ground that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed"). Accordingly, none of the reasons provided by the ALJ to reject Dr. Boustead's opinion are specific, legitimate, and supported by substantial evidence.[2] *See Reddick*, 157 F.3d at 725.

II.     The ALJ's Evaluation of Plaintiff's Impairments

At step two of the disability evaluation process,[3] the ALJ is required to determine whether the claimant has "a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1289–90 (9th Cir. 1996). Impairments must result "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908 (2010). An impairment "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." *Id.*; *see also Ukolov v.*

---

[2] The parties disagree regarding whether Dr. Boustead's opinion is contradicted and thus disagree regarding whether the ALJ must provide "clear and convincing" reasons for rejecting Dr. Boustead's opinion or specific and legitimate reasons supported by substantial evidence. *See Lester*, 81 F.3d at 830–31. The Court need not address the parties' disagreement, however, because the ALJ's decision is not supported by specific and legitimate reasons supported by substantial evidence, and thus her decision certainly does not amount to clear and convincing reasons. *See id.*

[3] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.*

*Barnhart*, 420 F.3d 1002, 1005–06 (9th Cir. 2005).

Plaintiff asserts that the ALJ erred by failing to include fatigue as a severe impairment at step two. Dkt.14, pp. 10–12. Plaintiff was diagnosed with fatigue and/or malaise on five separate occasions between October 2012 and October 2013. *See* AR 294, 299, 424, 579, and 588. Plaintiff also testified at her hearing that she gets "tired real easy since I had my heart attack. It's hard for me to do anything for a long period of time because of the fact that I get so tired." AR 62. Finally, when the ALJ asked plaintiff's attorney for his theory of the case, counsel responded in part:

> [O]ur theory is, Your honor, she has multiple medical problems, both physical and psychological … the most outstanding is her coronary artery disease with a cardiomyopathy, congestive heart failure, the three stents. Besides causing chest pain, probably the biggest impairment is the fatigueability.

AR 48–49. The ALJ did not discuss plaintiff's diagnosis of fatigue at step two, nor did she discuss plaintiff's diagnosis of fatigue at any point in her decision, other than mentioning once in passing that plaintiff has fatigue associated with heart disease. *See* AR 27–39, 34. Thus, the undersigned agrees that the ALJ erred in failing to at least discuss plaintiff's diagnosis of fatigue at step two. As this case must be remanded for further administrative proceedings in light of the ALJ's errors in evaluating the opinion of Dr. Boustead, on remand the ALJ also will reconsider whether plaintiff's diagnosis of fatigue is a severe impairment.

III.   The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines

REPORT AND RECOMMENDATION - 9

(the "Grids"). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100–1101. An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *See Embrey*, 849 F.2d at 422. Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ asked the vocational expert an extended hypothetical question in which she described a person with plaintiff's limitations, including the limitation that she can "carry out simple, routine tasks," and then inquired whether there are jobs in the national economy that such a person can do. *See* AR 72–73. The vocational expert opined that a person with such limitations can perform three representative occupations defined by the Department of Labor's Dictionary of Occupational Titles (the "DOT"): document preparer, final assembler, and patcher. *See* AR 73–74. The DOT sets forth job requirements for all three positions, including the necessary reasoning ability, which the DOT measures on a six-level scale. *See Zavalin v. Colvin*, 778 F.3d 842, 844 (9th Cir. 2015). Document preparer requires Level Three reasoning (*see* DOT (4th ed. 1991) § 249.587-018, 1991 WL 672349); final assembler requires Level One reasoning (*see* DOT (4th ed. 1991) § 713.687-018, 1991 WL 679271); and patcher requires Level Two reasoning (*see* DOT (4th ed. 1991) § 723.687-010, 1991 WL 679524). The ALJ did not ask the vocational expert to explain how a person who can only "carry out simple, routine tasks" could meet Level 3 reasoning requirement. *See* AR 73–74. Further, in her decision, the

REPORT AND RECOMMENDATION - 10

ALJ relied upon the vocational expert's testimony that a person with plaintiff's limitations can perform the document preparer, final assembler, and patcher jobs, but she did not explain whether plaintiff possessed the reasoning ability to perform these occupations. *See* AR 38–39.

Plaintiff avers that the ALJ erred by not resolving the conflict between the vocational expert's testimony and the DOT's reasoning levels. Dkt. 14, pps. 12–16. Specifically, plaintiff contends that her residual functional capacity limiting her to "simple, repetitive tasks" is in direct conflict with the DOT, which requires Level 3 reasoning for document preparer jobs and Level 2 reasoning for patcher jobs, and thus the ALJ was required to resolve this conflict through the vocational expert's testimony. *Id.* Defendant concedes in part and agrees that that the ALJ erred in failing to "resolve a conflict between Plaintiff's limitation to simple, routine tasks and the reasoning level demands of the document preparer job." Dkt. 15, pp. 5–6. Defendant argues, however, that the error was harmless because two other jobs remain upon which to affirm the ALJ's decision. *Id.*

The undersigned agrees that "[w]hen there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Zavalin*, 778 F.3d at 846 (citing *Massachi v. Astrue,* 486 F.3d 1149, 1153–54 (9th Cir. 2007); *see also Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015). Moreover, the undersigned notes that the Ninth Circuit has held "that there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning." *Zavalin*, 778 F.3d at 847. Thus, the ALJ erred in failing to resolve the conflict between plaintiff's limitation to simple, repetitive tasks and the demands of the DOT Level 3 Reasoning for the document preparer job. In addition,

REPORT AND RECOMMENDATION - 11

to the extent there is a conflict between plaintiff's RFC and the demands of the Level Two reasoning requirements for the patcher job, the ALJ also erred. *See Rounds*, 807 F.3d at 1003 ("There was an apparent conflict between [plaintiff's] RFC, which limits her to performing one- and two-step tasks, and the demands of Level Two reasoning, which requires a person to '[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions.'").

Nevertheless, the Court need not address this argument. An RFC assessment "must always consider and address medical source opinions." Social Security Ruling 96-8p, 1996 WL 374184, *7. If that assessment "conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.* As discussed above, the ALJ failed to properly evaluate the opinion of Dr. Boustead, and thus may not have included all of Plaintiff's limitations in the RFC assessment. This error is not "inconsequential to the ultimate nondisability determination," as the ALJ's step five findings are predicated on the ALJ's residual functional capacity findings. *See Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012); SSR 96-8p, 1996 WL 374184 ("This assessment of RFC is used at … step 5 to determine whether an individual is able to do other work."). Thus, the ALJ will necessarily need to revisit the step five findings on remand. Upon remand, the ALJ shall resolve any inconsistency between the vocational expert's testimony and the DOT.

IV.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is

REPORT AND RECOMMENDATION - 12

unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076–77 (9th Cir. 2002). Because issues still remain in regard to the medical opinion evidence in the record and plaintiff's ability to perform other jobs existing in the national economy, remand for further consideration of these issues is warranted.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court reverse the decision to deny benefits and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk

REPORT AND RECOMMENDATION - 13

is directed set this matter for consideration on **July 1, 2016**, as noted in the caption.

DATED this 17th day of June, 2016.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14